OTTO DREWS, Plaintiff, *v.* CARL DREWS, Defendant.

Supreme Court, Monroe Special Term, June 18, 1924.

Joint venture — agreement between mother and two sons to purchase property to be divided between sons on death of mother — title taken in name of one son — said son compelled to transfer one-half of property to brother.

Defendant will be required to convey a half interest in real property to the plaintiff where it appears that the purchase of the property by the plaintiff and the defendant and their mother, now deceased, was a joint venture, each putting in time and money toward the purchase, care and development of the property with the understanding that the two sons should divide the property on the mother's death, and that plaintiff was fraudulently induced to allow the defendant to hold title.

ACTION to establish interest in real property.

*Henry R. Howard* (*Nelson E. Spencer,* of counsel), for the plaintiff.

*William B. Hanks* (*Philetus Chamberlain,* of counsel), for the defendant.

RODENBECK, J. The conclusion from all the evidence is irresistible that the three parties involved in the purchase of the farms in question, the mother who put in $1,500, the plaintiff who put in concededly $700 but according to his testimony $1,100, and the defendant who put in $200 on the original purchase, did not go into the undertaking for the purpose of handing over the whole property to the defendant, although the title was taken in his name.

The purchase price of the first fifty acres bought December 10, 1908, was $3,600 which was taken care of by the mother's turning in her home for $1,500, the plaintiff paying $700, the assumption of a mortgage for $1,200, and $200 paid by the defendant. The second purchase of forty-four acres in the fall of 1909, adjacent to the first purchase, for $4,450, was met by assuming an existing mortgage of $1,000, giving a new mortgage for $1,500, advances by sisters of $1,500, and promissory notes to the purchaser by the defendant for $450.

These transactions do not show such a contribution by the defendant as to warrant an inference that he was the financial support of the undertaking or that it was his enterprise. He put in less actual consideration in the purchases than his mother or brother, and the

taking of title in his name was evidently a mere convenience and the result of the confidence and trust which the plaintiff and his mother had in him. When later, in 1920, it became necessary to pay for a well on the property, each of the three advanced about $500 more, further indicating a joint venture and not a sole enterprise of the defendant. It is not reasonable to suppose that the mother would have put the savings of her life into the property for the benefit of the defendant alone and deprive the plaintiff and her other children of their share. It is not likely that the plaintiff would have put in even the $1,100, to say nothing of his earnings, and receive no receipt or acknowledgment and ask for no security or payment for so many years except upon the understanding of a joint venture. It is not probable that the defendant would have remained silent for the same number of years, without saying something about the advances made by the plaintiff, if they were mere loans, and after the death of the mother, for the first time tell his brother when asked to put the latter's name in the deed, that there was " nothing doing."

Plaintiff worked six summer seasons on the farm without compensation, doing whatever was to be done, which he would not be likely to have done if his brother owned the property. He had a good trade and at the suggestion of his brother worked in the city and, with the exception of his board money, paid his earnings to his mother, who evidently was the cashier of the undertaking. The evidence of these payments is not as satisfactory as might be desired but the three parties evidently trusted each other and it is clear that these earnings were necessary to stock and equip the farm, construct the house and make improvements, as well as to support the occupants. The best evidence, the mother herself, is gone and her estate is not represented in this action, but it is unfortunate nevertheless that these payments rest entirely upon oral statements and admissions without a single receipt, check or other written evidence. The evidence of the defendant, however, is equally devoid of any documentary proof on this subject and both parties rely upon oral evidence, and stand upon an equal footing in this respect.

As soon as the place was purchased the plaintiff started to make cement blocks and to assist in building a home for the mother, a course consistent with the claim of part ownership and unexplainable, with the other seasons of work by him on the farm, upon any other theory. It is not strange that the other children are not making a claim in this action as they well realize that the parties to the action took care of and supported the mother for so many years and might make a claim which would equal or exceed the

$2,000 which she put into the property. There is no inference against the plaintiff to be drawn from the title being placed in the defendant in view of the age of the mother and the marital circumstances of the plaintiff, both of which might have given rise to complications in certain contingencies. The plaintiff claims that he put his earnings in the city into the property and that this money kept the farm going, which is not refuted by any statement of income from the property. If the defendant put in all of his time on the farm, the plaintiff divided his time substantially between the farm and the city, receiving no compensation for work on the farm and putting his city earnings into the place. The title deed is not such an impregnable fortification that the law cannot go back of it and find out the true relation of the parties. The evidence of the actual relation between the mother and sons is not satisfactorily met by mere general or specific denials by the defendant. All of the probabilities are consistent with the view that this was a joint enterprise and that the mother was satisfied to turn her property in providing she was given a home, leaving the brothers to divide the property after her death.

This view is sustained by the preponderance of the evidence. The only disinterested witnesses, the plaintiff's brother Gustav, his sister Mary, his niece Laura, two newspaper men and the two women who attended the Vogt picnic and visited the mother at her bedside, corroborate in various respects the plaintiff's version of the transaction with his brother, the giving of money by the plaintiff from his wages earned in the city to his mother and the main issues in the case. The brother Gustav testified in substance that the defendant said that when the time came the plaintiff would get his share and that he would make it all right and complained that while the plaintiff was in Philadelphia he had not sent him a cent; that the mother said that the three of them owned the farm and that the plaintiff and defendant would make it all right with the other children. The sister Mary, who loaned the defendant $1,000 to pay for the second place, testified that the defendant said that the title was in him because the plaintiff was married and the mother was too old; that she saw the plaintiff give his pay envelope to their mother and that the defendant said in answer to the question as to what they were going to live on, that the three of them bought the place, that he was going to work it, the plaintiff was to furnish the money and the mother was to keep house. The niece Laura testified that at the conference between the parties and the mother when the enterprise was discussed, the defendant said that it was best not to have the plaintiff's name in the deed and that when the plaintiff got his divorce

things would be fixed up, that there was not enough work for both of them on the farm and that what the plaintiff earned would help along and pay expenses, that she saw the plaintiff hand his pay envelope to his mother and that the mother said that when she passed away it would be " fifty-fifty " for the plaintiff and the defendant. A newspaper man who went to the farm to write it up testified that the defendant said that the property was owned jointly, and to another newspaper man the defendant said that he had read the article relating to the place, speaking of the title as owned jointly, but made no comment. Other disinterested witnesses for plaintiff testified to facts indicating that the plaintiff was contributing his earnings as late as the last illness of his mother. Another sister, Elize, who loaned defendant $500 toward the second place, and another niece, Elize, testified for the defendant to conversations with plaintiff about the original understanding, of which the other niece, plaintiff's witness, Laura, who was present, gives a different version, while the son and son-in-law of the sister Elize gave unimportant testimony on the main issues for the defendant.

The sister Elize, her son and daughter and son-in-law, the four witnesses for the defendant, are interested on the defendant's side by reason of a land contract made by the defendant with the son and son-in-law for forty acres of the first purchase, while the eight witnesses of the plaintiff, substantiating various features of his claim, appear to be wholly disinterested. This disinterested testimony cannot be cast aside and disregarded and if given its due force sustains the plaintiff's rather than the defendant's view of their dealings.

The case is instinct with a plan to buy and run the farms in common, providing a home for the mother and to divide the property upon her death between the parties to this action. The defendant is bound to carry out this understanding and his refusal to do so shows that he had conceived the idea of appropriating the proceeds of the enterprise to his sole benefit and had led the plaintiff to believe that he could be trusted, upon which the plaintiff relied and was misled, and this conduct of the defendant justifies the court in compelling him to abide by his agreement.

The only decree that can be made, the estate of the mother not being a party, is that the defendant be required to convey to the plaintiff a one-half interest in the property so that the whole property shall be held in common by the parties to the action, subject to any liens, incumbrances or claims against it, and any action or proceedings that may be hereafter taken.

Judgment accordingly.